### Central Oil Company of Kentucky, et al. v. Sandlin, et al.

(Decided November 10, 1922.)

### Appeal from Estill Circuit Court.

1. Mines and Minerals—Leases—Rentals.—Where an oil lease requires the lessee to commence at least one well on the premises within six months or to thereafter pay certain rentals, and there is paid at the time a substantial sum for the execution of the lease, the right of the lessee to drill during the six months is not dependent upon the payment of any rentals during that time.

2. Mines and Minerals—Leases—Operation.—Although the language of the lease imposes upon the lessee the payment of three hundred dollars for each year the commencement of a well is delayed under the terms of the instrument, and provides that upon such payment of three hundred dollars per annum quarterly in advance the same shall be continued in full force and effect, and that the lessor gives the lessee the right to continue same in effect from quarter to quarter by the payment of the quarterly payments in advance, after the expiration of the six months in which no well had been commenced, the parties contemplated that the lease should be kept alive from quarter to quarter and not from year to year, for if the full year was the unit about which the parties had contracted they would have provided for the payment of the whole three hundred dollars in advance.

3. Mines and Minerals—Leases—Rentals.—The advance rent having been paid for the first quarter after the expiration of the six months, and a well having been begun in good faith on the premises during the second quarter, the lessee was not then compelled to pay any future rentals but should pay the rental due at the beginning of the quarter in which the well was commenced.

B. D. BERRY for appellants.

HUGH RIDDLE and RIDDLE & SHUMATE for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellees brought this action asking judgment against appellants for three hundred and seventy-five dollars under the terms of an oil and gas lease executed by appellees to E. D. Watkins on the 29th of January, 1917.

The defendants answered setting up the terms of the lease, and denying that under its terms there was any right of recovery whatsoever.

The lower court sustained a demurrer to the answer of defendants, and they having declined to plead further a judgment was entered in accordance with the prayer of the petition, and the defendants have appealed.

There was filed with the answer a certified copy of the lease, and an interpretation of its provisions must determine whether the action of the lower court was proper.

The lease was executed by Sandlin and wife on the 29th of January, 1917, to E. D. Watkins, who thereafter sold and assigned same to a corporation which sold and assigned a one-half interest therein to the assignor of the appellant, Central Oil Company, and the latter, when it

acquired that interest, agreed to perform the conditions, covenants and stipulations in the lease, and comply with its terms.

Under the terms of the lease appellees for and in consideration of seven hundred dollars paid, and a one-eighth royalty in the event oil in paying quantities was discovered, leased to Watkins for two years, upon seventeen certain specified conditions and stipulations appended thereto, the interpretation of two of which must determine this controversy.

Neither party is asking for a cancellation of the lease, and the question is what, if anything, is due the plaintiff under the terms of the instrument? The provisions of the fourth clause setting forth the terms are:

"Second party shall commence at least one well upon the said premises within six months from the date hereof, or second party shall pay to the first party the sum of three hundred dollars for each year the commencement of said well is hereafter delayed, payable quarterly in advance, and upon the payment of said three hundred dollars per annum, quarterly in advance, this grant shall be continued in full force and effect so long as such quarterly payments are made, as if it contained no forfeiture clauses, it being understood that the right to prevent such forfeiture by the said payment of three hundred dollars per annum, payable quarterly in advance, is paid for and acquired through the consideration herein first above named."

The provisions of the thirteenth clause are:

"It is expressly declared by the first party that this is not a license or lease of the above described premises, but a conveyance of the oil and gas, thereunder upon the terms above recited, and, that for the consideration first above named, first party hereby gives to second party the express right to continue this conveyance in full force and effect, from quarter to quarter after the time above named for the commencement of operations thereon, by the payment of three hundred dollars per annum, payable quarterly in advance, as above provided for; but this right shall not be exercised by the second party after two years from the date hereof, if within that time oil and gas is not found on the said premises in paying quantities; but, if so found, this instrument and grant shall continue in full force and effect so long as oil or gas is produced from said premises in paying quantities."

It is alleged in the answer that the defendant prior to the 29th of January, 1918, which was during the first year of the life of the lease, commenced to drill and did drill and complete two wells on the property, and the earnest contention is made for appellant that as there was commenced and completed two wells on the property within the first year no quarterly or annual payments whatever, under the provisions above quoted, became due by it to the plaintiff. There is, however, no allegation that either of the two wells was commenced within the third quarter of the year, so it must be assumed that no well was commenced until after the beginning of the fourth quarter of the first year. It is alleged, however, in the petition that no well was commenced within the first six months after the execution of the lease, but that thereafter one quarterly payment of seventy-five dollars for three months was paid. There is no question here whether there was a completed well upon these premises. nor is there any question whether either party has the right to a forfeiture of the lease. The plaintiffs are asking for a judgment for rents under the terms of the lease, and the defendants are claiming that under a proper interpretation of the lease they owe no rents.

Under the express provisions of section four the lessee undertook to commence at least one well on the premises within six months, or to pay the lessors "the sum of three hundred dollars for each year the commencement of said well is hereafter delayed, payable quarterly in advance," and it seems to be conceded by each party in the briefs that the word "hereafter" should be "thereafter," so that the first quarterly payment, if no well was begun within six months, became due on the 29th of July, and that quarterly payment was made. Then we have the allegation of the answer that before the 29th of January, 1918, two wells were commenced and completed on the premises, but there is no allegation that either of those wells was begun within the third quarter of that year, and we must therefore assume that neither of them was begun until after the beginning of the fourth quarter.

The right of the lessee to drill during the first six months of the lease was not dependent upon the payment of any rental during that time, for the seven hundred dollars paid when the lease was executed not only paid for the privilege of drilling during that period, but also, under the language of the instrument, paid for the right

of the lessee thereafter to keep alive the instrument by making the quarterly payments in advance.

While the language of the instrument imposes upon the lessee the payment of three hundred dollars for each year the commencement of a well is delayed, and provides that upon such payment of three hundred dollars per annum quarterly in advance the grant shall be continued in full force and effect as long as such quarterly payments are made, it is clear from a reading together of the two quoted sections that the parties had in mind the keeping alive of the lease after the expiration of the first six months, for quarterly periods, by paying at the rate of three hundred dollars per year, quarterly payments in advance, whereby at each quarterly payment the right to commence a well on the premises would be extended for three months, and not for one year. In fact, the provision of clause thirteen above quoted that

"For the consideration first above named, first party hereby gives to second party the express right to continue this conveyance in full force and effect, *from quarter to quarter* after the time above named for the commencement of operations thereon, by the payment of three hundred dollars per annum, payable quarterly in advance, as above provided for,"

is an interpretation of the provisions of section four.

Any other construction would make one quarterly payment in advance keep alive the right to commence a well for the full term of one year, when manifestly no such intention is to be gathered from the instrument. On the other hand, if the full year was the unit about which the parties were contracting, they would have provided for the payment of the whole three hundred dollars in advance.

No reasonable interpretation can be given to these provisions except that the parties intended after the expiration of the first six months, the instrument should be kept alive under its provisions for quarterly periods, by the payment of quarterly payments in advance at the rate of three hundred dollars per year until such time during the life of the lease as a well should in good faith be commenced.

Therefore, when defendants in the fourth quarter of the first year in good faith commenced a well on the premises they no longer had to make any quarterly payments, for they had then complied with the terms of the

instrument; but having failed to pay the quarterly payment due at the beginning of the fourth quarter of the first year, they had presented a good defense to all rentals thereafter due, but had not presented a good defense to the quarterly payment due on the 29th of October, 1917.

It results from what we have said that the answer to the extent of three hundred dollars prayed for in the petition presented a good defense, and for that reason the demurrer to the answer should have been overruled.

For the reasons indicated the appeal is granted and the judgment reversed with directions to overrule the demurrer to the second paragraph of the answer.